Anthony Wayne **HENDRICKS**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 880S225.

Supreme Court of Indiana.

Sept. 3, 1981.

---

Dale K. Little, Steven J. Moss, Butler, Brown, Hahn & Little, P. C., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

On April 7, 1980, a jury found appellant guilty of attempted murder. He was sentenced to thirty years' imprisonment.

Appellant claims the verdict is not supported by sufficient evidence. This Court will look only to the evidence which supports the verdict and the reasonable inferences to be drawn therefrom. *Sloan v. State*, (1980) Ind., 408 N.E.2d 1264. This Court will neither weigh the evidence nor judge the credibility of the witnesses. The conviction will be upheld so long as the verdict is supported by substantial evidence of probative value. *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349.

The record discloses the following. The victim was acquainted with appellant. He claimed he and appellant had had an intermittent sexual relationship. On January 6, 1979, appellant spent the night with the victim. In the morning, appellant accused the victim of stealing money from his pants. The appellant asserted that the victim robbed him at gunpoint, but admitted he did not report the alleged robbery to the police.

The evidence shows the appellant left the house in the morning and returned a short time later with a sawed-off shotgun. He blasted the lock off the door of the victim's residence. After discovering the victim had left, appellant went to another house where he thought he could find the victim. When the victim saw the appellant approaching the second house, he ran out the back door. Appellant told a witness at the house that he intended to kill the victim and chased him through the back yard. He caught up with the victim and fired the shotgun into his face from a distance of approximately three feet. The left side of the victim's face was completely blown off. His left eye was gone and brain tissue was evident. He spent thirty-eight days in the hospital but managed to survive.

Appellant contends the State failed to prove beyond a reasonable doubt that he intended to kill the victim. The appellant testified he never intended to kill anyone, that he only wanted to scare the victim into giving back his money.

■ The foregoing facts clearly support the conclusion appellant intended to kill his victim. See *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260.

Appellant claims the trial court erred in refusing to allow cross-examination into the criminal history of a witness. On June 7, 1979, the prosecutor complied with the appellant's discovery request, but stated, "criminal records of State's witnesses, if any, will be furnished counsel prior to trial". Defense counsel made no further attempt to obtain these records until the morning of the trial on April 7, 1980. At that time the following discussion transpired:

"*Mr. Gilroy*: Before you bring the jury in, Judge, I have no Police records on any of these witnesses. Save me a lot of time if I had them. (T. 87)

*Ms. Ressler*: I'll be glad to have that taken care of over the lunch hour.

*Court*: Do they have records or anything.

*Ms. Ressler*: There are no usable offenses.

*Court*: No felony convictions or ___.

*Ms. Ressler*: ___ no, Judge.

*Mr. Gilroy*: None?

*Ms. Ressler*: None.

*Mr. Gilroy*: On any of them?

*Ms. Ressler*: I believe that's correct, I believe I have checked them all.

*Mr. Gilroy*: I have no reason to disbelieve Miss Ressler Judge, if that is the case.

*Court*: If there is any problem I suppose maybe you can discuss it over the lunch hour. (T. 88)

*Ms. Ressler*: I'll have them checked, but ----.

*Court*: ___ she says there isn't so, is there any reason why we shouldn't bring the Jury in?

*Mr. Gilroy*: No.

*Ms. Ressler*: Certainly the essential witnesses I did check.

*Court*: Alright, bring the Jury in now." (T. 89)

After lunch defense counsel raised the issue again as he sought to impeach one of the state's witnesses:

"Q. ... have you ever been convicted of Theft, before?

A. No, I haven't.

Q. Have you ever been convicted of Burglary?

A. No, I haven't.

*Ms. Ressler*: Objection, Judge, there is no basis for this line of questioning ...

     \*     \*     \*     \*     \*     \*

*Mr. Gilroy*: Your Honor, may I make an offer ----.

*Court*: ____ sustained ___.

*Mr. Gilroy*: ___ may I make an offer to prove here, sir?

*Court*: I don't think the question is in proper form, if you want to refer to the date, conviction, and, I think the proper ----.

*Mr. Gilroy*: ____ at approximately a quarter to twelve, Your Honor, I requested that the Prosecutor's Office give me copies of these gentlemens' Police records.

*Court*: Well, the proper form is, were you arrested and convicted on such and such date and received such and such a fine, yes or no.

*Mr. Gilroy*: How would I know?

*Court*: Well, I don't know, that's not my problem, I'm just the Judge, objection sustained, ask your next question.

*Mr. Gilroy*: At this time, Your Honor, I move for the compelling of that Discovery.

*Court*: Be overruled, ask your next question." (T. 139)

In the case at Bar there is no showing that counsel for appellant diligently pursued his right of discovery concerning criminal records of the potential witnesses. However, as shown by the above the prosecuting attorney represented to the court and to counsel, in open court, that none of the State's witnesses had criminal records. Upon specific inquiry from the judge, the attorney for the appellant indicated it would be alright to proceed with the jury trial and that he would discuss possible felony convictions of State's witnesses with the prosecuting attorney during the lunch hour. The trial judge was certainly correct when he admonished counsel for the appellant that he could not ask general questions of a witness concerning convictions. However, as noted above, the counsel not only asked general questions but the witness answered the questions in the negative. Thus, we see in this record a specific representation by the prosecuting attorney in open court that the State's witnesses did not have criminal records and when counsel asked a question, even though it was improper, of the witness, the witness answered that he did not have such a criminal record. We see nothing in this record to indicate any prejudicial error. There is absolutely no indication that any of the State's witnesses did have criminal records. If any State's witness did, in fact, have a criminal record which was not disclosed, the lack of such knowledge was due to the lack of diligence on the part of appellant's counsel. The appellant has failed to meet his burden of showing that the error com-

plained of was prejudicial. *Bean v. State,* (1979) Ind., 371 N.E.2d 713; *Turner v. State,* (1972) 259 Ind. 344, 287 N.E.2d 339.

The trial court is in all things affirmed.

All Justices concur.