David K. JONES, Appellant,

v.

STATE of Indiana, Appellee.

No. 03S00-8910-PC-773.

Supreme Court of Indiana.

Feb. 19, 1991.

Susan K. Carpenter, Public Defender, Bev Cummings, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

This is an appeal from the denial of post-conviction relief. A jury trial resulted in appellant's conviction of First Degree Murder, for which he was sentenced to life imprisonment. We affirmed on direct appeal, *Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349.

The facts are: In November of 1975, appellant was charged with first degree murder; at the time he was fifteen years of age. Appellant's first trial resulted in a hung jury. Before the start of the second trial, the prosecutor asked appellant's attorney whether he thought appellant would be willing to enter a plea of guilty to manslaughter. According to the testimony at the post-conviction relief hearing, there was a misunderstanding between the prosecutor and appellant's counsel as to the prosecutor's intent at that time.

Appellant's attorney claims he understood the prosecutor to be offering a plea bargain to appellant, whereas the prosecuting attorney testified that although he had little recollection of such a conversation, he did not offer a plea bargain but merely asked an exploratory question of appellant's attorney. Be that as it may, appellant's attorney advised appellant's mother that they might consider entering a plea of guilty to manslaughter. However, after discussion, both the attorney and the mother agreed that this should not be done.

■ Appellant now claims that he was never advised of the possibility of pleading guilty and had he been so advised, he would have accepted the plea of guilty to manslaughter. The somewhat conflicting testimony of the prosecuting attorney and defense counsel at the post-conviction hearing presented Judge DeClue with a fact-finding decision.

In making his decision, the judge stated: "All of the testimony of Mr. Samper and Mr. Childress can be easily reconciled. Mr. Samper's testimony about the 'discussion' reveals that it was informal, off-the-cuff, and in the nature of a 'would your client be interested' statement. The words spoken do not indicate a plea offer, but rather an invitation to open discussions. The actions of the parties do not support the idea that a plea offer had been made. After the statement had been made, Mr. Samper and Mr. Childress never again mentioned the matter to each other. It is entirely understandable that Mr. Childress does not remember making a plea offer. The words he spoke were not intended to be and did not constitute a plea offer."

The judge went on to find that because no plea offer was made it was not necessary to convey the information to the defendant. He thus concluded that this situation did not give rise to a denial of effective assistance of counsel. This Court will not reverse the judgment of the post-conviction court unless the evidence is without conflict and leads unerringly to a contrary result. *Schiro v. State* (1989), Ind., 533 N.E.2d 1201. We agree with the court below regarding the alleged offer to plea bargain.

■ Appellant claims he was denied due process and effective assistance of counsel when his attorney failed to object to Instruction No. 18, which instructed the jury on the law of malice and stated in part: "Therefore, malice is implied from any deliberate and cruel act against another however sudden." Appellant takes the position that this language violates *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct.

2450, 61 L.Ed.2d 39. In addressing this issue in his findings below, Judge DeClue correctly analyzed *Sandstrom* as holding that it was improper to presume one of the elements of a crime merely from the fact that certain acts had taken place which constituted other elements of the crime. He observed that the jury instruction in *Sandstrom* and like cases had failed to maintain the separate and distinct nature of the elements of the crimes.

He pointed out that:

"In the case at hand, Final Instruction No. 18 does not merge what must remain separate and distinct elements of the crime of first degree murder. Basically, the petitioner argues that the instruction requires the jury to find one element, malice, from the existence of another element, the fact that a person was killed. The instruction does not do this, however, and it cannot be viewed as an instruction prohibited by *Sandstrom* and *Francis.*" [2]

We further would point out that this was an issue which was available to appellant on his original appeal and was not raised. Therefore it was waived. *Schiro, supra.* This issue is available only on the basis that trial counsel's failure to object to the instruction or raise the issue on appeal constituted ineffectiveness of counsel. *See* Ind. Post–Conviction Rule 1(1). We agree with Judge DeClue's analysis of the situation. Therefore we do not find that trial counsel was ineffective.

The trial court is affirmed.

SHEPARD, C.J. and KRAHULIK, J., concur.

DeBRULER, J., concurs in result with separate opinion.

DICKSON, J., concurs in result.

DeBRULER, Justice, concurring in result.

In sum, I agree with this affirmance on appeal of the trial court's conclusion of law that appellant Jones was not denied effective assistance of counsel and with the af-firmance of the judgment as a whole deny-ing post-conviction relief. I cannot, how-ever, agree at all with the majority wherein it approves the trial court's conclusion of law that Final Instruction No. 18 was not erroneous. The trial court's analysis, ap-proved and quoted in the majority opinion, focuses upon the need for instructions to keep discrete elements of a crime separate and distinct. This abstraction falls short here. Here, malice is an essential element of the crime of murder of which appellant Jones stands convicted and confined. *Perkins v. State* (1934), 207 Ind. 119, 191 N.E. 136. Consequently, it is infirm and a denial of due process in a trial on this charge to read an instruction which kept malice en-tirely separate and distinct, but which nevertheless could have been understood by reasonable jurors as creating a manda-tory presumption that shifted the burden of persuasion on the element of malice. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). It is further pertinent here to recognize that the existence of other related instructions cor-rectly defining the element of malice and correctly placing the burden of persuasion on that element on the State merely contra-dict and do not explain and cure such an infirmity. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

In *Sandstrom,* an eighty-nine-year-old woman victim died of blows to the head with a shovel and five stab wounds, while being sexually assaulted. Constitutional error occurred in the trial of that case when the jury was told that the "law pre-sumes that a person intends the ordinary consequences of his voluntary acts." In *Francis,* a seventy-two-year-old man was shot to death through a door which he had just slammed in the face of Franklin, who was then pointing a gun directly at him and demanding his car keys. Constitutional er-ror occurred in the trial of that case when the jury was told, "[A] person ... is pre-sumed to intend the natural and probable consequences of his acts, but the presump-tion may be rebutted." In this case, a woman who lived alone was attacked in her home and died of multiple stab wounds.

2. *Francis v. Franklin* (1985), 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344.

*Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349. At appellant's trial for this murder, the jury was instructed that "malice is implied from any deliberate and cruel act against another however sudden."

Upon comparison, the instruction in this case suffers from the same infirmity as did the instructions in *Sandstrom* and *Francis*. It shifts the burden of persuasion on the essential element of malice. The flat instruction here that malice is implied would be received by a reasonable juror as having the same mandatory and restrictive force as an instruction that intention is presumed. Further, the predicate upon which the implied malice rests in this instruction is a "deliberate and cruel act," while the predicate upon which the presumed intent rested in the *Sandstrom* instruction was much the same, namely, "voluntary acts." This comparison leads directly to the conclusion that the instruction here on malice violates the due process clause of the Fourteenth Amendment in the same manner and to the same degree as those instructions condemned in *Sandstrom* and *Francis,* and that furthermore the instructions as a whole, including the other instructions which separately defined premeditated malice and which specifically placed the burden of proof on the State on that and all elements, do not show a cured violation. *Francis, supra.*

Turning next to the question of whether this issue was waived when appellant's trial counsel failed to object to Instruction 18, or when his initial appellate counsel failed to raise the issue on direct appeal, I would conclude that the issue is now properly presented to this Court for full consideration upon its merits to the same extent as if a proper objection had been made and overruled at trial and that ruling thereafter properly raised and affirmed by this Court in appellant's first direct appeal. There could be no case more on point on this waiver question than *Hill v. State* (1990), Ind., 561 N.E.2d 784. In that post-conviction case, which presented an almost identical situation from a procedural and timing standpoint, this Court refused, by a vote of three to two, to address the merits of a *Sandstrom* claim despite the fact that (1) Hill's trial and her direct appeal were completed before the *Sandstrom* case was de-cided, and (2) the issue of waiver was not raised and decided in the post-conviction trial court. The only difference between this case and the *Hill* case is the assertion for the first time of waiver in the State's brief in this appeal. This is no meaningful distinction, and I maintain that here, as in *Hill,* this Court's rejection of the merits of this fundamental due process claim on waiver grounds is totally without a rational basis and constitutes state and federal constitutional error. Any rejection of the merits of this claim is also contrary to the opinion of this Court in *Wallace v. State* (1990), Ind., 553 N.E.2d 456, wherein this Court addressed the merits of a *Sandstrom* claim in the appeal of the denial of post-conviction relief, and not upon the waiver principle, because waiver was not asserted and the trial court ruled on the merits. *See also Lucas v. State* (1990), Ind., 552 N.E.2d 35; *Reid v. State* (1988), Ind., 529 N.E.2d 1309; *Sulie v. State* (1988), Ind., 522 N.E.2d 380; *Blackburn v. State* (1988), Ind, 519 N.E.2d 554.

Having determined that constitutional error occurred when Instruction 18 was given to the jury, federal law requires an examination of whether such error was harmless beyond a reasonable doubt. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Sandstrom, supra; Reid, supra.* In this case, appellant was first tried in 1975 and the result was a hung jury. The second trial produced a new witness, namely, a fellow prisoner of appellant who testified that appellant admitted the killing to him. The second trial resulted in this conviction. The essential issue to be resolved by the jury in both trials was the identity of the dead woman's assailant. The physical evidence tending to prove identity was not strong, and the credibility of the fellow prisoner at the second trial was subject to serious question. The proof of malice by contrast was overwhelming. A lone, elderly woman was attacked in the privacy of her home at about 7:45 p.m. on a November evening. Her assailant, having some sort of sharp instrument in hand, attacked and killed her by inflicting numerous stab wounds in an event which involved such

force and violence as to leave her blood splattered all over the kitchen. Her assailant then left the house. Under these circumstances, I would hold that the constitutional error with respect to the instruction on malice was harmless beyond a reasonable doubt.